# In the United States Court of Federal Claims

No. 13-426 C

(Filed December 9, 2015)

```
* * * * * * * * * * * * * *   *
GROOMS & COMPANY               *
CONSTRUCTION, INC.,            *
                               *   Dismissal for Failure to
              Plaintiff,       *   Prosecute; RCFC 41(b);
                               *   Continued Flouting of Court
       v.                      *   Orders Despite Strong Warnings.
                               *
THE UNITED STATES,             *
                               *
              Defendant.       *
                               *
* * * * * * * * * * * * * *   *
```

## ORDER

The court herein sets forth its order directing dismissal of plaintiff's suit for failure to prosecute pursuant to Rule 41(b) of the Rules of the United States Court of Federal Claims (RCFC). As this court noted in its order of November 10, 2015 ("RCFC 41(b) Order") which denied defendant's motion to dismiss for failure to prosecute, there was at that time irrefutable evidence that plaintiff had failed to adequately prosecute its claim before this court. Nonetheless, the court afforded plaintiff "a final opportunity to comply with this court's orders and to avoid dismissal under this court's rules." RCFC 41(b) Order, at 1. That same order warned plaintiff that "in light of the pattern of dilatory conduct on the part of plaintiff described herein, this order serves as plaintiff's final warning that failure to comply with this court's orders and/or with plaintiff's discovery obligations shall constitute sufficient grounds for the court, without further notice to plaintiff, to enter an order dismissing this case pursuant to RCFC 41(b)." *Id.* Because plaintiff's counsel has yet again ignored a court-ordered deadline since the issuance of the RCFC 41(b) Order, dismissal at this time is appropriate. The court begins with a recitation of the facts that led to the issuance, on November 10,

2015, of these stern warnings to plaintiff's counsel.

## BACKGROUND[1]

The complaint in the subject matter was filed on June 27, 2013.[2] Defendant's answer was filed on October 25, 2013. The parties were invited to participate in Alternative Dispute Resolution (ADR) but resolved to do so only after the completion of "at least some discovery." Order of November 4, 2013. A Joint Preliminary Status Report (JPSR), timely filed on December 16, 2013, set forth a proposed discovery schedule. There was no indication in the JPSR that plaintiff faced any particular challenges in prosecuting this suit or that the proposed schedule was impractical.

On January 2, 2014 the court adopted the parties' proposed discovery schedule, including the following deadlines:

(1)   **Initial Disclosures**, exchanged on or before **January 30, 2014**;

(2)   **Fact Discovery**, completed no later than **October 28, 2014**;

(3)   **Plaintiff's Designation of Experts and Service of Expert Reports**, by **December 16, 2014**;

(4)   **Defendant's Designation of Experts and Service of Expert Reports**, by **February 17, 2015**;

(5)   **Service of Plaintiff's Response Report(s)**, by **April 16, 2015**;

(6)   **Service of Defendant's Reply Report(s)** by **May 19, 2015**;

---

[1]/ The facts recited here are undisputed.

[2]/ The RCFC 41(b) Order contains more detail concerning the underlying facts of this litigation and a fuller examination of the arguments before the court at that time. The instant order borrows liberally from the RCFC 41(b) Order, including citations to briefs and appendices which were considered by the court in its resolution of defendant's motion to dismiss for failure to prosecute.

(7)    **Expert Depositions**, from **May 25, 2015 - June 25, 2015**; and

(8)    **Joint Status Report**, no later than **July 16, 2015**.

Preliminary Scheduling Order of January 2, 2014.

The parties mutually agreed to delay the exchange of initial disclosures until February 11, 2014.  Def.'s App. at 3-4.  Defendant met that deadline, plaintiff did not.  *Id.* at 6.  Further, as noted by defendant in a letter dated February 20, 2014, plaintiff's initial disclosures did not appear to comply with RCFC 26(a)(1)(A)(iii) regarding the accounting back-up for plaintiff's computation of damages.  *Id.* at 7-8.  Nothing in the record before the court shows that plaintiff has *ever* complied with RCFC 26(a)(1)(A)(iii) or this court's Preliminary Scheduling Order of January 2, 2014 which specifically cites this rule.  Plaintiff has apparently failed to provide in approximately two years (December 2013 through December 2015) that which plaintiff's counsel agreed to provide in approximately two months (December 2013 through January 2014).

On February 20, 2014, defendant urged plaintiff to correct the deficiency in plaintiff's initial disclosures on or before March 24, 2014.  Def.'s App. at 8.  When no response from plaintiff's counsel was received, defendant served discovery requests upon plaintiff on March 31, 2014.  These formal requests included document production requests and interrogatories.  *Id.* at 27-29, 33-34.  Plaintiff did not provide any documents or answers to interrogatories within thirty days, as requested.[3]

Instead, the parties held a telephone conference on May 15, 2014 to discuss defendant's outstanding discovery requests.  Def.'s Mot. at 2-3.  Plaintiff's counsel promised during this call to provide more accounting data, but weeks went by with no action from plaintiff.  *Id.* at 3.  On June 13, 2014, defendant inquired as to when plaintiff would be meeting its discovery obligations.  Def.'s App. at 15.  On June 24, 2014, plaintiff's counsel provided additional accounting information which defendant characterized as "woefully inadequate."  Def.'s Mot. at 3.  In a

---

[3]/  There is no indication in the record that plaintiff has *ever* substantively responded to this requested discovery, or, for that matter, to supplemental discovery requests served on July 24, 2014.

July 2, 2014 email to plaintiff's counsel, defendant's counsel provided, in painstaking detail, his analysis of the shortcomings in plaintiff's accounting data related to its computation of damages. Def.'s App. at 20-21. This letter noted, too, that the court's discovery schedule was becoming unrealistic due to the delays in obtaining basic information from plaintiff. *Id.* at 21.

On July 24, 2014, the government served renewed discovery requests upon plaintiff which included new topics triggered by the accounting information provided by plaintiff on June 24, 2014. Def.'s App. at 24-39. There is no evidence that plaintiff *ever* responded to these document production requests or interrogatories. On October 7, 2014 the parties discussed settlement by telephone. *Id.* at 44. One day before fact discovery was due to close, the parties requested a stay of proceedings for ninety days so that settlement could be pursued and acknowledged that discovery had "only just begun." Jt. Mot. to Stay of October 27, 2014. Deadlines were suspended and a joint status report regarding settlement negotiations was required to be filed by January 26, 2015. *See* Order of October 29, 2014.

Defendant alleges, and plaintiff does not refute, that settlement negotiations were stymied by plaintiff's failure to present a settlement offer containing the supporting information requested by the government. Defendant's counsel, Mr. Douglas Hoffman, repeatedly asked for a sufficiently-supported settlement offer from plaintiff but none was forthcoming. Mr. Hoffman's emails of November 19, 2014, January 22, 2015 and January 23, 2015 eventually produced a request from plaintiff for additional time to prepare a settlement offer. Def.'s App. at 41-44. Based on plaintiff's proposed schedule for settlement negotiations, which would not even *begin* until after the status report deadline set by the court, the parties moved for a sixty-day extension of the ninety-day stay on the day the status report was due. *See* Jt. Mot. of January 26, 2015.

The parties' request for an additional sixty-day stay noted the delay encountered in trying to obtain a sufficiently-supported settlement proposal from plaintiff, and specifically set February 12, 2015 as the agreed-upon deadline for plaintiff's settlement proposal, among other deadlines. *Id.* This proposed deadline originated with plaintiff, not defendant. Def.'s App. at 42. The court granted the sixty-day stay, noted the deadline for plaintiff's settlement proposal as well as other deadlines, and set a new deadline of March 27, 2015 for a status

4

report.  *See* Order of January 28, 2015.  Plaintiff's settlement proposal, due February 12, 2015, was delivered over a month late, on March 16, 2015, despite government counsel's reminders and scolding.[4]  Def.'s App. at 45-47.  Not only was the settlement schedule disrupted (and now virtually impossible to complete during the stay period), defendant considered plaintiff's settlement proposal deficient because it suffered from the same defects plaguing plaintiff's previous computation of damages – there was insufficient supporting documentation to permit an analysis of the proposal by the government.  Def.'s Mot. at 4.

On March 19, 2015, March 20, 2015, March 24, 2015, and March 27, 2015, Mr. Hoffman attempted to contact plaintiff's counsel regarding the settlement impasse caused by plaintiff's inadequate settlement proposal documentation and/or the need to propose a revised schedule for discovery activities to the court. Mot. for Extension of Time of March 27, 2015.  No response from plaintiff was received.  On March 27, 2015, Mr. Hoffman requested a few more days so that a joint status report could be prepared; the court granted this enlargement request. The parties were ordered to confer and file a joint status report on April 9, 2015. Order of March 30, 2015.

Defendant attempted to communicate with plaintiff's counsel before this deadline but received no response.  Def.'s Mot. at 5.  In an attempt to comply with the court's *joint* status report order, on April 9, 2015 defendant filed a *unilateral* status report and proposed an updated discovery schedule.  The court's next order noted that plaintiff's counsel had failed to communicate with Mr. Hoffman as required by this court's orders:

> This case has been stayed since October 29, 2014 in order to facilitate the parties' settlement negotiations. The most recent input from plaintiff regarding the status of settlement negotiations was provided in a status report filed January 26, 2015.  Plaintiff has an obligation to comply with the court's orders and to participate in recommendations to the court regarding further

---

[4]/  Although defendant redacted its exhibit of plaintiff's settlement proposal to remove confidential settlement information, plaintiff improperly did not.  *Compare* Def.'s App. at 45, *with* Pl.'s Resp. at 7-8, *and* Pl.'s App. at 19-20.

proceedings.

Order of April 13, 2015.  The court therefore placed the onus of filing the next status report, due April 23, 2015, on plaintiff, not defendant.  *Id.*  Plaintiff's counsel was also ordered to confer with defendant's counsel.  *Id.*

Plaintiff's counsel apparently ignored every directive of the court's order. There is no record of any contact between plaintiff and defendant before April 23, 2015.  Nothing was filed by plaintiff on or before April 23, 2015.  Although plaintiff eventually referenced a "stalemate" in settlement negotiations which occurred on April 29, 2015, Pl.'s Status Report of May 27, 2015, this date is outside the time-frame set by the court.  On May 4, 2015, with no sign of compliance with the court's order of April 13, 2015, the court issued a Show Cause Order citing RCFC 41(b) informing plaintiff that dismissal for failure to prosecute was a possible consequence of plaintiff's failure to comply with the court's orders.  Plaintiff was afforded three weeks, or until May 26, 2015, to either file its status report or a notice explaining why dismissal for failure to prosecute should not occur.

Plaintiff missed this deadline as well.  On May 27, 2015, plaintiff filed a status report agreeing to the discovery schedule unilaterally proposed by the government in early April 2015.  The court granted plaintiff's request to file its status report out of time, but warned plaintiff's counsel that "this court will have very little tolerance for any such behavior going forward."  Order of May 29, 2015.  The court also refused to accept plaintiff's illogical acquiescence to a schedule proposed several weeks earlier by defendant, because at that point the proposed schedule included expired deadlines for activities still to be completed. The parties were ordered to agree to a schedule with viable deadlines and to file a joint status report by June 5, 2015.  *Id.*

The new discovery schedule proposed by the parties was adopted by the court and included the following deadlines:

(1)     Plaintiff's **compliance with outstanding Government fact discovery** shall be **COMPLETED** by or before **July 6, 2015**;

    (2)       Plaintiff shall designate expert(s) and serve report(s) on defendant by or before **October 29, 2015**;

    (3)       Defendant shall designate expert(s) and serve reports and response(s) on plaintiff by or before **January 21, 2016**;

    (4)       Plaintiff shall serve response report(s) on defendant by or before **February 18, 2016**;

    (5)       Defendant shall serve reply report(s) on plaintiff by or before **March 17, 2016**;

    (6)       Experts shall be available for deposition **March 21, 2016 - April 15, 2016**;

    (7)       On **May 12, 2016**, or two weeks after completion of discovery, whichever occurs earlier, counsel are directed to **FILE** a **Joint Status Report**.

Order of June 4, 2015.  Most noteworthy among these deadlines is plaintiff's deadline of July 6, 2015 to finally produce the documents and answers to interrogatories requested by defendant on March 31, 2014 and July 24, 2014. Incredibly, despite having approximately one year to perform these discovery tasks, which plaintiff originally agreed to complete before October 28, 2014, plaintiff failed to meet the July 6, 2015 compliance deadline.  Instead, after 5 PM on July 6, 2015, plaintiff's counsel, Ms. Cynthia Malyszek, requested that government counsel agree to an informal extension through July 13, 2015.  Def.'s App. at 54.  On July 7, 2015, government counsel agreed to this short extension beyond the time period for compliance set by this court.  *Id.*

Further extensions of time were requested by plaintiff's counsel the following week; on July 15, 2015 the government finally refused to accede to any more delays.  Def.'s App. at 52.  Mr. Hoffman suggested, instead, that Ms. Malyszek draft a motion for an enlargement of time for his review.  *Id.*  No communications were received from plaintiff's counsel, despite a reminder email

from Mr. Hoffman on July 20, 2015.  Def.'s Mot. at 7.  The government's next action in light of plaintiff's failure to meet deadlines or even to respond to communications from Mr. Hoffman was to file a Notice Regarding Non-Compliance with Scheduling Order, detailing plaintiff's failure to meet the July 6, 2015 deadline and failure to timely request an extension from the court regarding that deadline.  Notice of July 22, 2015.  Defendant also noted the impact of these delays on the court's discovery schedule, and that the government might be forced to file a motion to dismiss for failure to prosecute.  *Id.*

As of September 13, 2015 plaintiff had still not complied with the discovery due on July 6, 2015, and had still not responded to any of Mr. Hoffman's communications on this topic.  Def.'s Mot. at 8.  Hence, defendant's motion to dismiss for failure to prosecute was filed on September 13, 2015.  Plaintiff's response brief was due October 1, 2015.  The docket shows that an incomplete filing was submitted at two minutes before midnight on October 1, 2015, but the complete response brief (including attachments) was not filed until almost 3 PM on October 2, 2015.  The court granted plaintiff's motion for an enlargement of time and accepted for consideration plaintiff's corrected brief.  Defendant's reply brief was timely filed on October 16, 2015.

## RECENT EVENTS

On November 10, 2015 the court denied defendant's motion to dismiss for failure to prosecute but sternly warned plaintiff and plaintiff's counsel that continued dilatory behavior would provide adequate cause for dismissal of this suit for failure to prosecute.  The court reproduces here the conclusion section of that order:

> Defendant's motion is denied for the foregoing reasons.  Although plaintiff's response brief sets forth a proposal for a revised discovery schedule, that schedule is now outdated, whether or not it was ever achievable, or acceptable to both parties.  The court prefers that both parties **confer** and **establish** a discovery schedule that will be realistic and which will be accomplished.  **That schedule should take into account the fact that further disregard by plaintiff of court-ordered**

>**deadlines shall be sufficient grounds for dismissal pursuant to RCFC 41(b).**
>
>To ensure that defendant's counsel is not, once again, obliged to repeatedly remind plaintiff's counsel of upcoming or missed deadlines, **the court now requires plaintiff's counsel to file all upcoming joint status reports and any joint motions for enlargements of time. Regarding the latter, plaintiff's counsel is directed to the provisions of RCFC 6(b), in general, and specifically to the requirement that "good cause" be shown for requested extensions of time.**

RCFC 41(b) Order, at 11-12 (footnote omitted and emphasis added). To summarize, the filing of the next joint status report was counsel for plaintiff's responsibility, as would be the filing of any joint motions for an enlargement of time. Further, the court rejected plaintiff's proposed amended discovery schedule and ordered the parties to confer and establish a new discovery schedule.

Finally, after denying defendant's motion to dismiss for failure to prosecute, the November 10, 2015 order contained the following ordering language:

(2)    Plaintiff's counsel shall **PROVIDE** a copy of this order to each of the principals of Grooms & Company Construction, Inc. on or before **November 16, 2015**; and

(3)    On or before **November 30, 2015**, plaintiff shall **FILE** the parties' **Joint Status Report** proposing a revision of the discovery schedule set forth in the court's order of June 4, 2015.

RCFC 41(b) Order, at 12. At 6:14 PM eastern standard time on November 30, 2015, plaintiff's counsel filed a status report[5] which was not signed by defendant and which clearly stated that it was *not* a joint status report:

---

[5]/ This document was apparently filed in haste. Aside from numerous grammatical errors, it is dated "May 4, 2015," erroneously refers to the RCFC 41(b) Order as the "Court Order of November 11, 2015" (a federal holiday), and proposes discovery deadlines falling on Saturdays and "3/31//29/2016." Pl.'s Status Report of Nov. 30, 2015.

> The plaintiff was not able to reach the defendant counsel
> before this filing but will attempt to do so subsequent to
> this filing.

Pl.'s Status Report of November 30, 2015.  The court subsequently inquired of defendant's counsel whether he had been present and available for work from November 10, 2015 through November 30, 2015, and whether plaintiff's counsel had contacted him during that period of time.  Order of December 3, 2015.  Not only did defendant's counsel, Mr. Hoffman, respond to the court's inquiry, but plaintiff's counsel, Ms. Cynthia Malyszek, also filed a notice presenting her reasons for not filing a joint status report on November 30, 2015 as ordered.

The relevant facts are undisputed and as follows.  Mr. Hoffman was present and available for work during that time period in November, except on Veteran's Day, Thanksgiving, and the afternoon of the Friday after Thanksgiving.  No attempt was made by Ms. Malyszek to contact Mr. Hoffman before November 30, 2015 at 6:08 PM eastern standard time, when she sent a short email to which was attached her proposal for a revised discovery schedule, along with the following message:

> I was not able to contact you before filing this today due
> to my circumstances.  Please see the attached.  If you
> agree I will do nothing.  If you disagree I will file an
> addendum.

Def.'s Notice of December 4, 2015, at A1; Pl.'s Notice of December 4, 2015, Att. 2 at 6.  Six minutes after Ms. Malyszek sent this email, she filed the unilateral status report which contained a rudimentary proposal for a revised discovery schedule.

Plaintiff's counsel therefore did not timely *confer* with defendant's counsel regarding her proposed discovery schedule, did not timely *establish* a discovery schedule proposal with the input of defendant, and did not *file* a *joint status report* by the deadline set by the court's RCFC 41(b) Order.  Defendant's counsel communicated his displeasure with plaintiff's counsel regarding the after-hours email on November 30, 2015, stating that "[g]iven the Court's order I expected some coordination efforts in advance of the filing deadline."  Def.'s Notice of December 4, 2015, at 2.  Defendant also stated to the court "its objection to

Grooms' continued non-compliance with this Court's Orders." *Id.* at 3. Plaintiff's counsel apparently requests, although the language of that request is not clear, that the court now permit her to file a joint status report proposing further proceedings in the subject matter:

> [P]laintiff requests Joint Status be allowed to be filed and the that the [sic] schedule proposed and agreed to between the parties be approved.

Pl.'s Notice of December 4, 2015, at 5.

## DISCUSSION

This court's rules permit dismissal when "the plaintiff fails to prosecute or to comply with these rules or a court order." RCFC 41(b). There is relatively sparse precedential commentary on this rule in appeals decided by the United States Court of Appeals for the Federal Circuit. Two precedential cases provide some general guidelines.

In the first case, the Federal Circuit noted that "dismissal is a harsh sanction." *Kadin Corp. v. United States*, 782 F.2d 175, 176 (Fed. Cir. 1986). Nonetheless, dismissal under RCFC 41(b) is within the discretion afforded the trial judge.[6] *Id.* (citations omitted). Indeed, the Federal Circuit pointed out that a trial court's power to enforce its orders through the sanction of dismissal "'must be more than theoretical.'" *Id.* at 177 (quoting *Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1170 (D.C. Cir. 1981)). In *Kadin*, plaintiff's dilatory conduct was adequate justification for a dismissal for failure to prosecute:

---

[6] Defendant argues that the Federal Circuit has not explicitly adopted any multi-factor test which sets bounds on the trial court's discretion in this regard. Def.'s Reply at 6. That statement of the law appears to be correct, although at least one judge of this court has considered such a framework as part of the dismissal for failure to prosecute inquiry. *See CANVS Corp. v. United States*, 110 Fed. Cl. 19, 29 (2013) (citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006)). Defendant argues, further, that only a "gross abuse of discretion" invalidates a dismissal by this court for failure to prosecute. Def.'s Reply at 6 (citing *United States v. Chas. Kurz Co.*, 396 F.2d 1013, 1016 (C.C.P.A 1968)). In this case, plaintiff's conduct fails to satisfy *any* of the standards that might prevent dismissal under RCFC 41(b). The court relies here principally on two seminal Federal Circuit cases, but has also considered the multi-factor test set forth in *CANVS*.

> [The] appellant repeatedly and without valid justification
> ignored both court-imposed deadlines and court rules.
> Indeed, the appellant did not even timely respond to the
> order to show cause why the complaint should not be
> dismissed or request leave to file its untimely
> response. . . .  The appellant's entire course of conduct
> reflected a callous disregard for the rules and regulations
> of the court and fell far short of the obligations an
> attorney owes to a court before which he is conducting
> litigation.

782 F.2d at 176-77.

Counsel for plaintiff's conduct here is strikingly similar.  Multiple court-ordered deadlines have been ignored.  Here, too, no valid justification has been offered to excuse plaintiff's delays in completing basic discovery tasks and Ms. Malyszek's failure to reasonably confer with defendant and to submit timely filings.[7]  The only obvious difference between this case and *Kadin* is that here plaintiff's counsel has asked for leave to file untimely submissions once deadlines have passed.

Turning now to a second, oft-cited case, the Federal Circuit therein again noted that dismissal under RCFC 41(b) is within the discretion of the trial court. *Claude E. Atkins Enters., Inc. v. United States*, 899 F.2d 1180, 1183 (Fed. Cir. 1990) (citations omitted).  In *Claude E. Atkins*, the plaintiff had been twice warned in court orders that dismissal under RCFC 41(b) might result if that party continued to ignore court-ordered deadlines.  *Id.*  Under this precedent, therefore, "two clear warnings" referencing RCFC 41(b) will apparently suffice such that

---

[7]/ Although plaintiff's counsel recited a litany of claimed obstacles to compliance with defendant's discovery requests, none of the obstacles cited can excuse the egregious failures on the part of plaintiff to meet generously extended compliance deadlines that were agreed to by plaintiff's counsel.  Plaintiff's counsel has offered similar excuses for her failure to timely accomplish the tasks set forth in the RCFC 41(b) Order, but there was ample time for the given tasks and no impediment to the filing of a motion for an enlargement of time if, indeed, good cause for an enlargement existed.

dismissal is not an abuse of the trial court's discretion.[8]  Here, plaintiff received two clear RCFC 41(b) warnings, as well as two more general warnings that plaintiff must comply with the court's orders.  *See* Orders of April 13, 2015, May 4, 2015, May 29, 2015 and November 10, 2015.  Plaintiff has continued to flout discovery deadlines and miss filing deadlines despite these warnings.  Thus, under *Claude E. Atkins* and *Kadin*, dismissal of this case for failure to prosecute is within the court's discretion.

The court therefore considers whether, under the guidance provided by binding precedent, and upon examination of the particular facts of this case, it should dismiss plaintiff's suit.  Plaintiff's prosecution of its claim has been dilatory and unacceptable.  The docket in this case reflects that repeated warnings to plaintiff's counsel have had no beneficial effect on plaintiff's compliance with its discovery obligations or its obligations to defendant's counsel and the court.  Dismissal is the only option which would conclusively put an end to unjustified delays and the flouting of the court's deadlines by plaintiff.  Under *Kadin* and *Claude E. Atkins*, the court sees no alternative to dismissal which would lead to the efficient litigation of plaintiff's claim.

The court cannot foresee any amelioration of the conduct of plaintiff's counsel were the court to allow plaintiff's counsel to try, once again, to meet upcoming discovery and filing deadlines.  Indeed, all of the evidence is to the contrary.  Each new deadline provides just another opportunity for plaintiff's counsel to belatedly ask for forbearance as she, yet again, fails to comply with court orders.  This is unfair to both defendant and the court.

The court notes, too, that Grooms & Company Construction, Inc. was given a copy of the RCFC 41(b) Order.  Thus, plaintiff has been on notice of both the dilatory conduct on the part of plaintiff's counsel, and the court's warning that further dilatory conduct would justify dismissal of this suit.  In the previously issued RCFC 41(b) Order, the court even advised plaintiff that the primary reason it had declined to grant the government's motion to dismiss for failure to prosecute and was affording plaintiff a final chance to pursue its claim was that "plaintiff

---

[8]/ It is not clear, however, that the Federal Circuit would require two warnings in all circumstances.  *See Duncan v. United States*, 432 F. App'x 963 (Fed. Cir. 2011) (affirming, in a non-precedential decision, a dismissal entered two weeks after the deadline for the filing of an amended complaint had passed, where only one dismissal warning was provided the plaintiff).

would more deeply suffer the consequences of dismissal than would plaintiff's counsel." RCFC 41(b) Order, at 11. Unfortunately, the court's forbearance out of concern and consideration for plaintiff apparently was futile. Therefore, in these circumstances, this court can no longer shield Grooms & Company Construction, Inc. from the actions of its chosen counsel.

Finally, the court notes that even under the multi-factor test for Rule 41(b) dismissals that was proposed by plaintiff when opposing defendant's motion to dismiss for failure to prosecute, Pl.'s Resp. at 6, these factors weigh overwhelmingly in favor of dismissal. The five factors are: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *CANVS Corp. v. United States*, 110 Fed. Cl. 19, 29 (2013) (quoting *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006)). The first three factors obviously favor dismissal because plaintiff's dilatory conduct would, absent dismissal, continue to needlessly consume government and court resources that have been dedicated to reminding and warning plaintiff of its obligations to the court. The fifth factor also favors dismissal, in the court's view, because stern warnings and the threat of dismissal have had absolutely no effect on plaintiff's prosecution of its suit. Lastly, although the fourth factor is seen as weighing against dismissal in most cases, here there has been no evidence that plaintiff or plaintiff's counsel has committed to reaching the merits of this case.[9] Thus, even under the multi-factor standard which guides some courts in their interpretation of Rule 41(b), this suit must be dismissed.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that the Clerk's Office is directed to **DISMISS**, with prejudice, plaintiff's complaint in this matter for failure to

---

[9] The court notes defendant's concern that plaintiff has not been able to locate the most basic of contract performance documentation in order to prosecute its claim. *See* Def.'s Reply at 4 n.3. Defendant also points to the passage of time and the lack of any progress in obtaining discovery from plaintiff. Def.'s Notice of December 4, 2015, at 3 (citing Pl.'s Notice of December 4, 2015, Att. 2 at 4). The court agrees that on this record plaintiff has demonstrated no interest in putting in the effort required to obtain a ruling on the merits of its suit.

14

prosecute pursuant to RCFC 41(b).

/s/Lynn J. Bush
LYNN J. BUSH
Senior Judge